## JACKSON COUNTY GRAIN DRYING COOPERATIVE and JACKSON COUNTY RICE DRIER, INC. *v.* NEWPORT WHOLESALE ELECTRIC, INC.

CA 82-411                                      652 S.W.2d 638

Court of Appeals of Arkansas
Opinion delivered June 22, 1983

*Thaxton & Hout* and *Macom, Moorhead & Green,* by: *Marvin D. Thaxton,* for appellants.

*Pickens, Boyce, McLarty & Watson,* by: *Wayne Boyce,* for appellee.

LAWSON CLONINGER, Judge. This is an action brought by appellee, Newport Wholesale Electric, Inc., to assert a materialman's lien, alleging that materials furnished by appellee were used in the construction of a grain drier on property owned by appellants.

The construction job initially started when appellant, Jackson County Rice Drier, Inc., entered into negotiations with Jaco Construction Company for the construction work, with Jaco furnishing all labor and materials. Jaco sought a bid from Harold Rutledge, d/b/a Rutledge Electric, for the electrical work on the project. In turn, Rutledge Electric sought a bid from appellee for the materials necessary to perform the electrical work. Appellee submitted a bid to Rutledge Electric of $14,000. Based upon this bid, Rutledge Electric submitted a bid on the same day to Jaco for the complete electrical work of $56,000. Based upon this bid, Jaco entered into a contract with Jackson County Rice Drier, Inc. for the total contract job for $1,600,000.

A day or two later, after the execution of the written contract for the construction project, Benny Payne of appellee Newport Wholesale contacted Rutledge Electric and informed Harold Rutledge that Newport Wholesale had made a mistake and bid the job too cheaply. The facts are

sharply in dispute from this point regarding what was told Mr. Payne of Newport Wholesale.

Mr. Payne testified that the materials he furnished cost him $3,500 more than his bid, and that he was assured by Wiley Albright of Jaco Construction Company that Newport Wholesale would be paid $3,500 above the original bid. Mr. Albright denied that any promise was made to Mr. Payne. Leon Rutledge, president of Jackson County Rice Drier, Inc., testified that he told Wiley Albright of Jaco that if Albright and Harold Rutledge of Rutledge Electric wanted to pay appellee $1,200 he would just give them $400 out of his own pocket. The $1,200 figure was not mentioned by any other witness, so presumably the trial judge relied upon this statement of Leon Rutledge to support the judgment of $1,200 for appellee.

Soon after the materials were furnished by Newport Wholesale, appellant Jackson County Rice Drier, Inc. went from a corporation to a cooperative, becoming Jackson County Grain Drying Cooperative. The change in structure is not relevant to the issues in this case.

The circuit court sitting without a jury found that it should apply the doctrine of unjust enrichment and find a quasi contract or constructive contract which required appellants to pay to appellee an amount which the court found to be fair under the circumstances, namely $1,200. The court further adjudged that appellee have a lien for that amount on the property of appellants.

We must reverse the judgment of the trial court.

Appellee candidly admits in his argument to this court that no one promised to pay appellee anything beyond the contract price of $14,000. Even Mr. Payne's testimony is only to the effect that he was told by Wiley Albright of Jaco Construction Company that "they would make the difference between the cost up, but it would be done at the end of the job." There was admittedly no contract between appellee and anyone. Appellee states:

No contract existed and the trial court so found. Therefore, the law of contracts is unavailable and only the principles of equity, justice and fairness are available to remedy the injustice which would otherwise result from the appellee paying to the manufacturer substantially more for the motor control than the appellant was charged. In effect, Payne's — Newport Wholesale Electric Goods became irretrievably incorporated into the new rice drier without him receiving adequate compensation.

The trial court did in fact find that there was a quasi contract or a constructive contract upon which the doctrine of unjust enrichment should be based.

In *Dunn* v. *Phoenix Village, Inc.*, 213 F. Supp. 936 (Western District Ark. 1963), Judge John E. Miller stated:

Quasi or constructive contracts (commonly referred to as contracts implied in law) are obligations which are imposed or created by law without regard to the assent of the party bound, 'on the ground that they are dictated by reason and justice, and which are allowed to be enforced by an action ex contractu. They rest solely on a legal fiction and are not contract obligations at all in the true sense, for there is no agreement; but they are clothed with the semblance of contract for the purpose of the remedy, and the obligation arises not from consent, as in the case of true contracts, but from the law or natural equity. Such contracts rest on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another, and on the principle that whatsoever it is certain that a man ought to do, that the law supposes him to have promised to do.'

Judge Miller's definition of quasi contracts is correct, although his parenthetical reference to them as contracts implied in law may be misleading. Justice Lyle Brown, speaking for the Arkansas Supreme Court in *The Downtowner Corporation* v. *Commonwealth Securities Corp.*,

243 Ark. 122, 419 S.W.2d 126 (1967), attempted to clarify the distinction:

> Confusion has resulted from the interchangeable use of the terms 'implied contract' and 'quasi contract.' Quasi contracts are not based on promises to pay or perform. They are obligations which are creatures of the law designed to afford justice. Generally, an indispensable element of a contract, expressed or implied in fact, is a promise.

The issue in this case is essentially the same as the question decided by the Arkansas Supreme Court in the case of *Reynolds* v. *Texarkana Construction Co.,* 237 Ark. 583, 374 S.W.2d 818 (1964). In *Reynolds,* Texarkana Construction Company was the successful bidder on a construction job. Before bidding for the job Texarkana had first obtained bids for the electrical work involved. Reynolds was the low bidder for the electrical subcontract. Texarkana relied upon Reynolds' figure in computing its own bid for the principal contract.

Before the principal bids were opened, Reynolds discovered that he had seriously underbid, and after the principal bids were opened Reynolds withdrew his offer. Reynolds refused to perform the subcontract and he appealed from a trial court judgment awarding damages to Texarkana. The judgment was affirmed by the Arkansas Supreme Court, holding that the better rule is that the subcontractor is bound to perform upon the terms of his bid. The court stated:

> In this situation, despite the absence of a formal acceptance, the offer by Reynolds became binding under the principle of promissory estoppel. 'A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if justice can be avoided only by enforcement of the promise.' Rest., Contracts, Section 90. . . . Justice demands that the loss resulting from the subcontractor's carelessness

should fall upon him who was guilty of the error rather than upon the principal contractor who relied in good faith on the offer that he received.

The materials furnished by appellee were supplied under the terms of an express contract, and appellants, in reliance upon appellee's bid, materially changed their position by signing a contract for work to be done on their property. Appellants had an undisputed right under the terms of its written contract for $1,600,000 to receive the materials in question from Jaco Construction Company, whether those materials were furnished by the appellee or by someone else. As the court observed in *Worthen Bank and Trust Co.* v. *Franklin Life Insurance Co.*, 260 F. Supp. 1 (D.C. Ark. 1966), "Parties to business transactions are required to act justly and honestly, but they are not required to act unselfishly or altruistically."

In *Whitley* v. *Irwin*, 250 Ark. 543, 465 S.W.2d 906 (1971), the court, in discussing the theory of unjust enrichment, stated:

> The maxim or doctrine appellees rely upon is that no one shall be allowed to unjustly enrich himself at the expense of another. The word 'unjustly' as so used means 'unlawfully.' . . . One who is free from fault cannot be held to be unjustly enriched merely because he has chosen to exercise a legal or contract right.

We hold that appellants were claiming no more than what they were legally entitled to, and since they were only asserting a legal right, the doctrine of unjust enrichment is not applicable.

The judgment of the trial court is reversed and the cause is remanded with directions to dismiss appellee's complaint.

GLAZE, J., concurs.

COOPER, J., dissents.